I'd like to first thank the court for the opportunity to appear here pro se I know that the court doesn't entertain oral arguments from pro ses very often and I appreciate the opportunity. Welcome. What I'd like to do is take the court directly to the seller's decision and near the end of the decision in the last couple paragraphs the court noted the dilemma of granting absolute immunity to the board because it would obviously cause, you know, genuinely aggrieved people no civil redress and having spent nine years in constitutionally confined and fulsome prison I can assure the court I feel I'm genuinely aggrieved. The question really is from a legal standpoint is there a way to carve out an ability for myself in this case to sue knowing that the court is very unlikely to overturn sellers because of the serious public policy implications that weigh in that decision. And I believe the way the court can do that is to first look at the Icardi v. Shaughnessy decision cited in the briefs. I know the court's familiar with the facts of Icardi so I'm not going to go through them but the central holding of the Icardi decision, the U.S. Supreme Court found that when the appointer of a board dictates the decisions of the board, the person who appears before it does not receive due process because there was no grant of, there was no independent discretion exercised on the part of the board itself. It was a sham hearing. The reason why Icardi is so important is because this is exactly what I allege occurred in my case. I allege that the governor ordered the board to rescind nearly all unexecuted grants of parole. And the evidence doesn't come from some third party hearsay. It comes from the chairman of the parole board at the time in sworn testimony. This happened. Whether we want to admit it or not, it occurred. It's sad but it happened. So the real question becomes, as we relate the Icardi decision to my case, the true underpinning of sellers and the granting of the board's absolute immunity is their exercise of independent discretion. That's the underpinning of the decision. So if I can prove that the board didn't exercise independent discretion, they should not be allowed to claim qualified, they should be under a qualified immunity standard under Anderson v. Boyd and Swift v. California. They should not be entitled to claim absolute immunity if they never exercised independent discretion. And The sellers case, to which you refer, did discuss the potential for intimidation and the risk of constant unfounded suits. Now, is that reasoning any less applicable today? No. And that's why I said I understand the court's very unlikely to overturn sellers. What I'm trying to do We can't. Sorry. We can't. Go ahead. But what I'm trying to do is create an ability for them not to be able to argue that they're entitled to absolute immunity. And the district court was, because of sellers, very, they were, the district court judge was not very willing to hear that argument. He felt very constrained by sellers. I think if you read the transcript of the hearing in his order, he makes that very clear. And what I believe is, if you look at the evidence of my case, I could easily make the The facts are very clear. I was granted parole in 1991, in June of 1991. Governor Wilson had the right, under 3041.2 of the penal code, to reverse that decision. He reviewed my case and chose not to. About a year or so later, he decided to run for president. That's when he issued the order to rescind the dates that Albert Leddy, the chairman of the parole board, relates to you in a sworn statement. A couple of years go by, it takes them a while to get to me, and then my rescission proceedings start. As I lose my parole date, I begin a nine-year court fight that ultimately ends up in the Eastern District Court, where I prevail on a habeas corpus petition. Now, as this court's well aware, under the ADPA, that's a very difficult task. I know that Judge Reinhart and other judges have talked about the unfairness of that law. So it's very difficult to prevail. Yet I did. So what we end up with is a situation where if there's no basis in fact or law for the board to have rescinded my decision, during the time frame Mr. Leddy says they were being ordered politically to rescind all the parole dates, it's clear a reasonable person could infer that's the only reason why they took mine. I hadn't misbehaved. I had done nothing wrong. So that's essentially what I'm trying to bring to the court today. I'm trying to say, if I could have a hearing in the district court with an opinion from the Ninth Circuit that says there is an exception, and that exception's already been recognized in Anderson v. Boyd and Swift v. California. If the board isn't making an adjudicatory decision, they only get qualified immunity. And I contend, even though they did hold a hearing in my case, they never exercised any independent discretion. They had been ordered by their appointee to have their decision. The difference between not exercising adjudicatory authority and not exercising independent adjudicatory authority, it's not that different from a bribe, for instance, or a conspiracy. And there are cases, I think in the case of judges, if it's a dishonest judge or if he's intended to do a conspiracy with a prosecutor, the immunity still applies. I would agree that there are situations where it would and where it wouldn't. But I... Do you know of any where there's been an exception? I do not know of any, but I know that the Accardi case from the Supreme Court specifically says that when the appointer of a board, this isn't a case of bribery, although I understand your point, this is a case where the governor of California ordered the board to violate the civil rights of more than 100 people. He ordered them to do it. And I think a judge, I think most judges would report that to authorities and recuse themselves from the case. But that's not what the parole board did. The parole board said, yes, sir, and went about a two or three-year conspiracy to take these parole dates away. And that's what Mr. Letty documents in his declaration. And I believe that under that factual scenario, the U.S. Supreme Court has clearly held that the inmate who appeared before that hearing never had a hearing. The board never exercised independent discretion. And the whole underpinning of Sellers is the exercise of independent discretion. If you look at Butts v. Economo, which was really the case that Sellers addressed, it even went through, in footnote nine of the opinion, a very clear listing of why board members, why judges are entitled to absolute immunity. And if you look at those factors, none of them applied to the parole board except the discretion. When the governor dictated the decision, the board abdicated their decision-making role. They never exercised any discretion. They said, yes, sir, that's what we'll do. And that's what happened in my case. And I can prove it. And I just need... Save your last two and a half minutes for your brothel. Thanks. Thank you. Good morning, Your Honors. May it please the Court, my name is David Sonata. I'm here on behalf of Defendant Appellees Giacquinto, Bentley, and Rich. The acts which Mr. Chandler impeclates, Giacquinto and Bentley, were performed when they rescinded his parole date. As this Court has held in Sellers and Anderson, the parole board officials are entitled to absolute quasi-judicial immunity for decisions to grant, deny, or revoke parole because these tasks are functionally comparable to a judge. Now, although Mr. Chandler argues that these officials did not exercise their independent discretion, these defendants are completely shielded from a 1983 civil rights action, regardless of what is alleged. Now, in this case, Mr. Chandler conceives that the policy reasons that this Court found in Sellers are still valid, and we don't argue that at all. That this is the type of situation in which a multitude of suits can be expected. That the filing of these suits is a form or intimidates the decision makers. That the function of the decision-making process is affected by these suits. And for these reasons, Your Honor, we believe that absolute immunity should be applied to Giacquinto and Bentley. Moreover, Your Honor. Why shouldn't there be an exception if the entire board's authority is removed and it is not acting independently? That's a fairly narrow kind of exception. Why would that cause such great harm to say if the board is rendered inoperable, in effect, by a governor that tells them not to exercise their authority or they'll be removed from office? I think in this situation, Your Honor, it would basically eliminate the immunity. If a party is allowed to allege, and in this case, Mr. Chandler's case was dismissed on the board didn't exercise their independent discretion, then there would be no immunity. These suits would go on. And absolute immunity is designed to stop the suits at their initial stages. And this is what was done here. Well, I was not suggesting that broadly. I said if there were a rule that said that if the entire board ceased functioning as an independent entity because of orders from a governor, that wouldn't open individual board members to suits and wholesale. I don't imagine it's very often that states have what we had in California, a series of governors who announced blanket policies because they had political ambitions. Your Honor, I believe that even a small exception would gut the immunity. I think to the extent that a party could plead that, that it would be included in every pleading by an aggrieved parolee, that they would begin to put on every plea that one of the basis is that the board didn't exercise their independent discretion, that the governor ordered them to make a decision. And I think a small exception would not be workable. It would essentially gut the immunity. And the functions of the board would be affected. Let me ask about Mr. Rich and his entitlement to qualified immunity. If we assume for the purposes of 12B-6, the allegations that no new evidence was introduced and the hearing was nothing more than a second guessing of the decision to grant plaintiff parole in 1991, why does that not why does that give him why is he entitled to? As you know, Your Honor, Mr. Rich was Chief Executive Officer of the Parole Board. By statute, he did not have authority to participate in the decision to rescind parole. He does not have the power to do so. And Mr. Chandler never alleged that he participated in the hearing. Our contention is, Your Honor, that Mr. Rich's actions had a reasonable basis to believe that what he was doing was lawful. And there is no causal connection between Mr. Rich's actions and an alleged constitutional violation. He doesn't have immunity, does he? It's just a, there's no, you're asking that he be dismissed on a different basis rather than immunity, right? Your Honor, we argued that to grounds that there was no causal connection between his actions and also qualified immunity as well, Your Honor. How does he have qualified immunity? He's not a member of the Parole Board. That is correct, Your Honor. So how does he have qualified immunity? That, as alleged, that his monitoring of, basically, he was a liaison between the Governor's Office and the Board. And that he had no reason to believe that what he was doing was unlawful. He was doing basically what, within the limits of law. Yes, but he didn't give him absolute immunity. He's not making the decisions. He may have qualified immunity, and there may be no causal connection. But you're not arguing that he has absolute immunity. No, sir, we're not. Counsel, is it not a fact that in the individual case, the Governor does have the last word? I wouldn't say the last word, Your Honor, that he does have the authority to review decisions that, under the statute, the Board meets in bonk after the Governor makes his recommendation. And that decision is reviewed. Thank you. If the panel has no further questions, defendants are preferred. In this case, he had already exercised that authority, so that he could no longer overrule the Board. And what he then did, because he had not overruled the Board, he then ordered the Board to change its decision. That's the allegation. That's not quite my understanding of the allegations, Your Honor. My recollection of it is... Let's take the facts, I mean, up to that point. He did have the authority to overrule the Board. He did not do so. And then it went back to the Board to implement its decision. And at that point, the allegation is that he then interfered with the Board and removed its independent authority. That is correct, Your Honor. All right, thank you, counsel. Thank you, Your Honor. A few points in rebuttal. First of all, I wanted to touch on the fact that the district court had noted in its order, when it granted absolute immunity to the Board members, that the... Would you pull the microphone down just a little bit to make sure that everybody can hear? Is that better? Thank you. The district court had ordered in the order in the motion to dismiss on the absolute immunity grounds for Bentley and Giaquinto, the court had said that the complaint did not specifically say that they abdicated their decision-making roles. And that's just flat wrong. If you look at the complaint, paragraphs 16 to 25 clearly lay out the series of events that occurred. And then paragraph 26 of the complaint is very clear. It says specifically that the actions which occurred between April 11th, 1994... Excuse me, it was August 11th, 1994 and April 12th of 1995 were taken in furtherance of Governor Wilson's direction that no Willie Horton event interfere with his run for president. That is paragraph 26 of the complaint. And if you look at the complaint and you view it in the light most favorable to the plaintiff, and you assume the factual allegations are true, there is no possible way you can come to that conclusion if you read the complaint fairly. And I want to make sure the court understands that and considers that as it makes its decision. As to what Mr. Sonata said, I just don't think, I think he overstates the harm that would occur from such a narrow, narrow exception as I'm requesting the court grant. Because it would be almost, it's almost impossible to believe this occurred, let alone that anyone could appear in court and prove it. And motions to dismiss come immediately in these type of cases. There would be a hearing before a district court judge, and if you didn't have a body of evidence to make out the case that the board didn't exercise independent discretion, you'd be thrown out of court right there. I agree that some inmates will no doubt file frivolous claims. There is no doubt about that. But that shouldn't stop a genuinely aggrieved person from being able to prove such an egregious violation of the Constitution. As for Mr. Rich, I do not to this day understand why the court granted him qualified immunity. I allege much more than that he was just a messenger, as the briefs in the case from the Attorney General said. I specifically alleged he was the governor's point man in this conspiracy. He's the one that orchestrates board policy. If you look at Mr. Letty's declaration, it clearly sets forth that when he tried to make this public and discuss it in the public agenda, Ted Rich is over the chairman of the board, and he prevented that from even happening and occurring on the board's agenda. And I think that's a very important point. Mr. Rich is in no way innocent here. He was directing the illegal policy for the governor's office. Thank you. I have one more question, Mr. Chandler. Have you ever considered going to law school? I have, yes. I am trying to do that right now, actually. Thank you. All right. Thank you, counsel. Case dis-argued will be submitted.
judges: Nelson, Reinhardt, Oberdorfer